UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RITA H., | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|   v. | )    No. 4:18 CV 1605 JMB |
| | ) |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
|        Defendant. | ) |

**MEMORANDUM AND ORDER**

This action is before the Court pursuant to the Social Security Act, 42 U.S.C. §§ 401, *et seq.* ("the Act"). The Act authorizes judicial review of the final decision of the Social Security Administration denying Plaintiff Rita H.'s ("Plaintiff") application for disability benefits under Title II of the Social Security Act, see 42 U.S.C. §§ 401 et seq. and supplemental security income under Title XVI, see 42 U.S.C. §§ 1381 et seq. All matters are pending before the undersigned United States Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c). The ALJ's determination is not supported by substantial evidence on the record as a whole, and therefore it is reversed. See 42 U.S.C. § 405(g).

**I. Procedural History & Summary of Memorandum Decision**

On August 12 and December 15, 2015, Plaintiff filed applications for disability benefits, arguing that her disability began on March 3, 2015, as a result of complex regional pain

---

[1] After the case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

syndrome ("CRPS"), back pain/degenerative disc disease, fleeting paresthesias, and severe migraines. (Tr. 66, 162-63, 209) Plaintiff's date of last insured is December 31, 2019. (Tr.66) On September 17, 2015, Plaintiff's claims were denied upon initial consideration. (Tr. 77-81) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at the hearing (with counsel) on July 18, 2017, and testified concerning the nature of her disability, her functional limitations, and her past work. (Tr. 34-65) The ALJ also heard testimony from Brenda Young, a vocational expert ("VE"). (Tr. 58-65, 293-94) The VE opined as to Plaintiff's ability to perform her past relevant work and to secure other work in the national economy, based upon Plaintiff's functional limitations, age, and education. (Id.) The ALJ also received testimony from Dr. Subramaniam Krishnamurthi, a medical expert, in the form of responses to interrogatories. (Tr. 737-62) After taking Plaintiff's testimony, considering the VE's testimony, and reviewing the rest of the evidence of record, the ALJ issued a decision on March 20, 2018, finding that Plaintiff was not disabled, and therefore denying benefits. (Tr. 8-20)

Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration ("SSA"). (Tr. 1-7) Plaintiff submitted additional opinion evidence which was not before the ALJ when he decided Plaintiff's case on March 20, 2018. The Appeals Council did not consider the additional opinion evidence, Dr. Berry's Questionnaire, finding that it did not relate to the period at issue, March 3, 2015, through December 31, 2019. On August 13, 2018, the Appeals Council denied review of Plaintiff's claims, making the March 20, 2018, decision of the ALJ the final decision of the Commissioner. Plaintiff has therefore exhausted her administrative remedies, and her appeal is properly before this Court. See 42 U.S.C. § 405(g).

In her brief to this Court, Plaintiff raises two related issues. First, Plaintiff argues that the

ALJ's Residual Functional Capacity ("RFC") determination is not supported by some medical evidence. Plaintiff also challenges the Appeals Council's failure of to consider Dr. Berry's Questionnaire as new evidence. Second, she argues that the hypothetical question to the VE does not capture the concrete consequences of her impairments. The Commissioner filed a detailed brief in opposition.

As explained below, the Court has considered the entire record in this matter. Because this Court finds that remand is appropriate for the ALJ to review the newly submitted evidence, it does not reach the RFC issue.

## II. Medical Records

The administrative record before this Court includes medical records concerning Plaintiff's health treatment from December 21, 2012, through May 11, 2017. The Court has reviewed the entire record. The following is a summary of pertinent portions of the medical records relevant to the matters at issue in this case.

### A. Revitalife Wellness Center – Dr. Christina Robins (Tr. 305-32)

Between December 21, 2012, and May 11, 2017, Dr. Christina Robins treated Plaintiff for low vitamin D levels, increased fatigue, generalized weakness, migraines, and decreased exercise endurance. Plaintiff reported doing well with current medications.

During treatment on October 8, 2014, Plaintiff reported wanting to change her medication regimen, even though it helped her migraines, due to the cost of the medication. In follow-up treatment on May 11, 2015, Plaintiff reported still being off work due to her pain and neuropathy.

### B. SSM Medical Group – Pain Management – Dr. Hugh Berry (Tr. 333-427, 444-736)[2]

---

[2] Although the ALJ thoroughly discussed Dr. Berry's treatment notes, he never identified Dr.

The medical record includes a substantial volume of medical records documenting Plaintiff's treatment for back, hip, and leg pain between April 11, 2014 and May 1, 2017. Although several different physicians on staff at SSM Healthcare treated Plaintiff, the record indicates that Dr. Hugh Berry, board certified in pain management and anesthesiology, was the primary physician who addressed Plaintiff's back, hip, and leg pain during the relevant time period.

On April 11, 2014, Dr. Berry evaluated Plaintiff's left lower extremity pain which started after a car accident in 2009. Plaintiff reported that walking, sitting, and standing aggravate her pain and that her pain was at 5-6 out of 10. Examination showed a full range of motion for her cervical spine and no tenderness or pain with rotation. Joint examination showed ranges of motion without inflammation. Plaintiff had a normal gait with the ability to heel toe tandem walk. Dr. Berry prescribed an opiate trial and reviewed a pain management agreement. Dr. Berry diagnosed Plaintiff with lumbar radiculopathy, myofascial pain, and osteoarthritis.

On July 24, August 13, and December 22, 2014, Dr. Berry administered steroid injections to alleviate Plaintiff's low back pain.

On October 1, 2014, Plaintiff returned for evaluation of her current narcotic medication regimen and reported her primary pain was located on her left hip and that her pain was at 5-6 out of 10. Examination showed a full range of motion of her cervical spine and no tenderness. Examination of her lumbar spine showed a full range of motion with no pain with extension flexion rotation. Plaintiff had a normal gait with the ability to heel toe tandem walk. Plaintiff reported improved activity level and a reduction in pain by at least 50% on her medication regimen.

Berry by name.

On March 3, 2015, Dr. Edward Kuntz administered a lumbar block bilaterally to alleviate her pain. Plaintiff's diagnoses included lumbar radiculopathy, sacroiliitis, myofascial pain, and osteoarthritis. A March 11, 2015, MRI of Plaintiff's lumbar spine showed mild disc bulges at L4-L5 and L5-S1 but no central canal stenosis or foraminal stenosis in the lumbar spine. On March 12, April 22, and May 18, 2015, Dr. Berry administered lumbar facet and nerve root steroid injections to alleviate Plaintiff's low back pain. On March 17 and 31, 2015, Dr. Berry administered a transforaminal lumbar epidural and a nerve root steroid injection. On April 15, 2015, Dr. Michelle Van Buren administered a lumbar epidural and nerve root steroid injection.

On May 18, 2015, Plaintiff returned for follow-up treatment for her lower back pain and to discuss CT scan results. Plaintiff reported continued low back pain and burning in her leg and foot which had increased since her last visit and that her pain was at 6 out of 10. Dr. Berry found Plaintiff to have 5/5 motor strength. Physical examination showed a full range of motion in her lumbar spine and pain with extension, no tenderness to palpation, sacroiliac area tenderness, positive straight leg raise, antalgic gait, and diminished reflexes. Dr. Berry assessed Plaintiff with CRPS, neuralgia, sacroiliitis, and administered a lumbar facet joint steroid injection.

Plaintiff returned for medication refills on June 16, 2015. Plaintiff reported continued low back pain and bilateral leg pain and aggravating factors including bending, lifting, and prolonged activity such as walking, sitting, and standing. Plaintiff reported relief from medications, heat and ice, and lying down and that her pain was at 5-6 out of 10. Examination showed a full range of motion of her cervical and lumbar spine but pain with lumbar extension and no tenderness to palpation. Dr. Berry administered a lumbar facet injection and continued her medication regimen.

In follow-up treatment on July 13, 2015, Plaintiff reported heat, medications, and

elevation alleviate her pain. Plaintiff reported low back axial pain from lumbar facet injection and her pain was at 5-6 out of 10.

On August 31, 2015, Plaintiff returned for evaluation of her current medication regimen, and Plaintiff reported left leg, back, and bilateral arm pain. Examination showed a full range of motion her cervical spine and lumbar spine with no tenderness to palpation. Dr. Berry noted that Plaintiff may be a candidate for a spinal cord simulator. Physical examination showed diminished reflexes, grossly normal motor strength, antalgic gait, positive straight leg raise, and pain with lumbar extension.

On November 9, 2015, Dr. Berry initiated a dorsal column stimulation trial with a Medtronic System. In follow-up treatment with Dr. Berry on November 13, 2015, Plaintiff reported continued CRPS of her right leg and low back pain with relief from medications. Plaintiff reported that her pain was at 5 out of 10. Plaintiff also indicated that she had an 80% pain relief with stimulator and that it "covers all her area of pain." Although Plaintiff was instructed to return in a week to discuss an implant, she did not return until January 18, 2016.

On January 18, 2016, Dr. Berry continued Plaintiff's medication regimen. Plaintiff reported that her pain was present daily and constant. On April 28, 2016, Dr. Audrey Vizzi administered a lumbar facet joint steroid injection. In follow-up treatment on May 16, 2016, for bilateral lumbar back and left leg pain, Plaintiff reported aggravating factors to be prolonged activities and relief from medication, ice and heat, and changing positions. Plaintiff reported that her pain was at 6 out of 10. On August 22, 2016, Dr. Berry continued her pain medication regimen. Plaintiff reported that her pain was at 6-7 out of 10 and described her pain as constant and shooting with numbness and tingling. On September 8, 2016, Dr. Berry administered a lumbar nerve block injection.

During treatment on October 3, 2016, Plaintiff reported losing flexibility on her left side even though she is stretching and that her pain was at 6 out of 10 with pain medication. Examination of her thoracic back showed non tender, and a MRI showed mild disc bulges at L4-L5 and L5-S1 but no canal or foraminal stenosis viewed in the lumbar spine. A bone scan showed a "hot spot' medial right acetabulum but Dr. Berry noted that Plaintiff's pain is on her left side. Dr. Berry diagnosed Plaintiff with hypermobility syndrome and referred Plaintiff to a rheumatologist for further evaluation. On October 6, 2016, Dr. Berry administered a bilateral steroid injection. Plaintiff returned on November 28, 2016, and reported an increased pain rating, burning and radiation down both legs, and neck pain with numbness in her left arm. Plaintiff reported that her pain was at 8 out of 10 with pain medication. Dr. Berry listed "[p]hysical limitations 5 min max stand sit walk." (Tr. 647) Dr. Berry recommended bilateral sacroiliac joint injections as well as trigger point injections in her lower back. On December 8, 2016, Dr. Berry administered a bilateral steroid injection.

On January 16, 2017, Dr. Berry treated Plaintiff's lumbar back pain and left leg pain. Plaintiff reported that her pain was at 6 out of 10 with pain medication. An MRI of her lumbar spine showed no compression or subluxation or marrow infiltrative process but only mild disc desiccation at L4-L5 and L5-S1. Plaintiff reported that the bilateral steroid injection helped her low back pain. Dr. Berry listed "[p]hysical limitations 5 min max stand sit walk." (Tr. 657) Dr. Berry offered a physical therapy referral to relieve her thoracic outlet syndrome symptoms, but Plaintiff indicated that she would think about it. Plaintiff returned on April 5, 2017, for follow-up with Dr. Berry for her bilateral lumbar back and left leg pain and reported relief from medications, limiting activities, and applying ice and heat. On May 1, 2017, Plaintiff returned for treatment, and Dr. Berry continued her medication regimen. Plaintiff reported that her pain

was at 6 out of 10 with pain medication and described her pain as constant, throbbing, radiating, and sharp. An MRI showed no evidence of acute fracture, subluxation, or dislocation. Dr. Berry listed "[p]hysical limitations 5 min max stand sit walk" and noted that the bilateral steroid injection helped Plaintiff's low back pain. (Tr. 693)

### C. St. Louis Behavioral Medicine Institute (Tr. 428-37)

On January 22 and February 22, 2016, Plaintiff received treatment at St. Louis Behavioral Medicine Institute. The doctor identified strategies to help Plaintiff manage her thoughts. Plaintiff reported anxiety stemming from her legal issues and making treatment decisions.

### D. SSM Neuroscience Institute - Dr. Laurence Kinsella (Tr. 438-43)

On July 28, 2015, Dr. Laurence Kinsella found Plaintiff's symptom of fleeting paresthesias with normal EMG and MRI results was suggestive of a migraine equivalent.

On October 29, 2015, Dr. Kinsella examined Plaintiff and found slight reduced sensation of her left foot. Plaintiff reported curtailing her activities except walking her dog, driving, and shopping. Dr. Kinsella found Plaintiff had functional sensory dysfunction and migraine equivalents. Dr. Kinsella discussed the need for Plaintiff to exercise daily and to diet.

## III. Opinion Evidence

### A. Dr. Subramaniam Krishnamurthi (Tr. 738-61)

On September 30, 2017, Dr. Subramaniam Krishnamurthi completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) ("MSS") and Medical Interrogatory Physical Impairment(s)-Adult ("MI"). (Tr. 751-60) Dr. Krishnamurthi noted Plaintiff's diagnoses included CRPS, degenerative disc disease of the lumbar spine, headaches, and peripheral neuropathy, and her impairments did not meet or equal any listing. Dr.

Krishnamurthi found that Plaintiff could lift/carry up to ten pounds frequently and eleven to twenty pounds occasionally; could sit for two hours and stand or walk for one hour at one time; could sit for six hours and stand or walk for three hours in an eight-hour work day; could frequently reach, handle, finger, and push/pull with her right and left hands; frequently operate a foot control with either foot; could only occasionally climb stairs, balance, stoop, kneel, or crouch and never climb on ladders or scaffolds; and frequently be exposed to environmental limitations including humidity, dust, fumes, odors, pulmonary irritants, and extreme cold or heat. Dr. Krishnamurthi indicated that Plaintiff was capable of performing activities like shopping, traveling alone, ambulating without an assistive device, walking a block at a reasonable pace on rough uneven surfaces, using public transportation, climbing a few steps without a handrail, preparing simple meals, and caring for her personal hygiene.

**B.** **Dr. Hugh Berry** (Tr. 30-33) [3]

On May 17, 2018, Dr. Berry completed a Physical Residual Functional Capacity Questionnaire ("Questionnaire") regarding Plaintiff. Dr. Berry represented that he began treating Plaintiff in March 2014, with follow-up treatment every two to three months as needed. Dr. Berry listed Plaintiff's diagnoses as CRPS, sacroiliitis, anxiety, neuritis, peroneal neuritis, migraines, fatigue, chronic pain syndrome, cervicalgia, insomnia, and fibromyalgia. [4] Dr. Berry

---

[3] The Court must consider this opinion evidence in determining whether the ALJ's decision was supported by substantial evidence. Frankl v. Shalala, 47 F.3d 935, 939 (8th Cir. 1995). For the sake of continuity, discussion of this opinion evidence is incorporated with that of the evidence before the ALJ at the time of his decision. This Court's role is limited to deciding whether the ALJ's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the ALJ's determination was made. See, e.g., Nelson v. Sullivan, 966 F.2d 817, 822 (8th Cir. 1992).

[4] Notably, Plaintiff did not list sacroiliitis, anxiety, neuritis, peroneal neuritis, fatigue, chronic pain syndrome, cervicalgia, insomnia, and fibromyalgia as disabling impairments in her applications or in her request for reconsideration. Failure to allege a disabling impairment in an

opined that Plaintiff had tried multiple medications, including narcotics, but the medications caused drowsiness, an inability to make decisions, and loss of balance.  Dr. Berry found that Plaintiff was able to sit, stand, or walk less than two hours in an eight-hour work day and would need to get up and walk around every eleven to fifteen minutes when needed.  Dr. Berry further found that Plaintiff could rarely lift ten pounds and occasionally lift less than ten pounds, and she would have significant limitations with her hands, fingers, and arms.  According to Dr. Berry, any job must allow Plaintiff to move about at will and lay flat, if needed, and to take unscheduled breaks every one to two hours for at least thirty minutes.  Dr. Berry further opined that on average Plaintiff would miss more than four days of work each month.  Dr. Berry also opined that Plaintiff needed to avoid extremely cold/hot environments and vibrations.

## IV.     Forms Completed by Plaintiff

In the Function Report-Adult, Plaintiff stated that she cooks easy meals, does light cleaning/laundry, and goes grocery shopping every other week for thirty to forty-five minutes. (Tr. 238-45)  Plaintiff reported that she no longer goes to many of her niece or nephew's sporting events.  Plaintiff indicated that she can use a computer for thirty to sixty minutes at one sitting.

## V.      The Hearing Before the ALJ (Tr. 34-65)

The ALJ conducted a hearing on July 18, 2017.  Plaintiff was present with an attorney and testified at the hearing.  The VE also testified at the hearing.

---

application for disability benefits is a significant factor in determining the severity of an alleged impairment.  See, e.g., Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).  However, Plaintiff offered fatigue as a basis for disability at her administrative hearing and received medical treatment for sacroiliitis and peroneal neuritis.  See, e.g., Sullins v. Shalala, 25 F.3d 601, 604 (8th Cir. 1994) (finding it "noteworthy that [the claimant] did not allege a disabling mental impairment in her application for disability benefits, nor did she offer such an impairment as a basis for disability at her hearing.") (internal citation omitted).

## A.     Plaintiff's Testimony

Plaintiff began her testimony by noting that she received her diploma in nursing in 1997 and then finished her Bachelor's Degree in 2013.  (Tr. 38)  Plaintiff testified that she lives alone in a condo with her dog.  (Tr. 44)  Plaintiff indicated that she does her own cleaning, chores, and cooks easy meals.  (Tr. 44)  Plaintiff visits her mother in the neighborhood and on occasion, she attends her niece or nephew's athletic games.  (Tr. 45)  Plaintiff testified that she walks her dog on a trail for thirty minutes, or forty-five minutes on a good day.  (Tr. 46)  Plaintiff drives close to home, no more than two miles away.  (Tr. 51)  Plaintiff does a little Pilates and yoga to maintain her strength and goes to the pool in the summer.  (Tr. 58)

In 2002, Plaintiff worked as a registered nurse at a hospital on the surgical floor.  (Tr. 39)  Plaintiff then worked at an outpatient surgery center as a nurse and thereafter at a hair removal and treatment center as an aesthetic nurse.  (Tr. 40-41)  Plaintiff next worked at a hospital in the recovery room but left after going on short-term disability.  (Tr. 43)  Plaintiff applied for long-term disability through the hospital.  The hospital denied her request, but on appeal, Plaintiff prevailed and received disability benefits until August 2017.  (Tr. 43-44)  Plaintiff last worked in March 2015.  (Tr. 48)

Plaintiff testified that she has ocular migraines on average lasting three to four days every other month, causing blurred vision.  Plaintiff receives medication as treatment.  (Tr. 52, 55)  Regarding pain management, Plaintiff testified that she receives medications and steroid injections but her relief only lasts a few weeks.  (Tr. 53)  Plaintiff indicated that her medications make her drowsy.  (Tr. 58)  Although Plaintiff received 80% relief of her symptoms after a spinal cord stimulator trial, she decided not to have a permanent placement because of financial reasons and scar tissue formation resulting in nerve damage.  (Tr. 56-57)  Plaintiff testified that

she would reconsider once insurance starts covering the stimulator. (Tr. 57) Plaintiff indicated that she is always cold. (Tr. 58)

Plaintiff testified that she cannot climb steps or inclines and cannot lift or carry more than ten pounds. (Tr. 46) Plaintiff does grocery shopping for thirty to forty minutes but she also utilizes a grocery delivery service as needed. (Tr. 48) Plaintiff testified that she has to elevate her leg on pillows while lying down on her bed about 75% of the day. (Tr. 50) Plaintiff has balance problems.

### B.    The VE's Testimony

The VE indicated that Plaintiff's past work included jobs such as a registered nurse but that Plaintiff could not perform her past relevant work as a nurse. (Tr. 59)

The ALJ asked the VE a series of hypothetical questions to determine whether someone Plaintiff's age, education, work experience, and specific functional limitations would be able to find a job in the local or national economy. (Tr. 59) First, the ALJ asked the VE to assume a hypothetical individual limited to light work but could never climb ladders, ropes, or scaffolds; never crawl; occasionally clime ramps or stairs, balance, stoop, kneel, crouch; frequently handle and finger bilaterally but avoid concentrated exposure to extremes of cold, wetness, humidity, and vibration and to operation and control of moving machinery and unprotected heights, and whether such individual could perform Plaintiff's past work. The VE responded that such a hypothetical person would not be able to perform Plaintiff's past work as performed or as a hospital nurse. (Tr. 59) The VE also indicated that such individual could perform nursing positions that are classified as light such as a public school nurse or an office nurse. (Tr. 59)

The ALJ next asked the VE to assume the same hypothetical individual except the individual requires a sit/stand option at no greater than thirty-minute intervals throughout the day

but would remain on task, whether such individual could perform the work outlined in her earlier

response. (Tr. 61) The VE responded such individual could not perform the job duties but there

would be other light work available to the individual including file clerk type, small product

assembly, and customer service representative positions all classified as sedentary jobs. (Tr. 61)

Next, the ALJ asked about work performed at the sedentary level with a sit/stand option

every thirty minutes to stretch and walk but the individual would remain on task. (Tr. 62) The

VE indicated that such hypothetical person would be able to perform the job duties of a small

products assembly, customer service representative, and ticket taker jobs, all sedentary and

unskilled jobs. (Tr. 62-63) The VE further testified employers for such jobs allow for

unexcused or unscheduled absences not more than once a month and routine breaks of fifteen

minutes in the morning and mid-afternoon and a thirty to one hour break for lunch. (Tr. 63) The

VE opined that the individual could be off task no more than 10% of the work day. (Tr. 64)

## VI.   The ALJ's Decision

In a decision dated March 20, 2018, the ALJ determined that Plaintiff was not disabled

under the Social Security Act. (Tr. 11-20) The ALJ determined that Plaintiff had severe

impairments of CRPS, degenerative disc disease of the lumbar spine, and peripheral neuropathy.

(Tr. 13-14) The ALJ determined that Plaintiff had an RFC to perform sedentary[5] work with the

following modifications: (1) she can never climb ladders, ropes, or scaffolds; (2) she can

occasionally climb ramps/stairs; (3) she can occasionally balance, stoop, kneel, crouch, or crawl;

---

[5] Per 20 C.F.R. 404.1567(a)

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers and small tools.
> Although a sedentary job is defined as one which involves sitting, a certain
> amount of walking and standing is often necessary in carrying out job duties.
> Jobs are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

(4) she can frequently finger and feel bilaterally; (5) she has to avoid concentrated exposure to extreme cold, wetness, vibration and all exposure to unprotected heights and hazardous machinery; and (6) she can sit/stand option briefly to stretch and walk but remain at work tasks. (Tr. 14)  The ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record…."  (Tr. 15)  Regarding Plaintiff's pain, the ALJ found that Plaintiff "had not generally received the type of medical treatment one would expect for a totally disabled individual."  (Tr. 18)

The ALJ specifically considered Dr. Krishnamurthi's MSS and MI dated September 30, 2017.  The ALJ gave those opinions partial weight "because he did not provide detailed explanation of why he found [his] limitations."  (Tr. 18)

The ALJ found Plaintiff was unable to perform any of her past relevant work as a registered nurse.  The ALJ proceeded to step 5 and found, based on VE's testimony, that there are other jobs existing in the national economy she was able to perform the requirements of representative occupations such as a small products assembler.  Based on hypothetical questions posed to the VE, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act because someone with her age, education and functional limitations could perform other work that existed in substantial numbers in the national economy.  (Tr. 19)

The ALJ's decision is discussed in greater detail below in the context of the issues Plaintiff has raised in this matter.

**VII.**  **Standard of Review and Legal Framework**

"To be eligible for … benefits, [Plaintiff] must prove that [he] is disabled …."  Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v.

Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A).  A plaintiff will be found to have a disability "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B).  See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, 20 C.F.R § 404.1520, "[t]he ALJ follows 'the familiar five-step process' to determine whether an individual is disabled….  The ALJ consider[s] whether:  (1) the claimant was employed; (2) [he] was severely impaired; (3) [her] impairment was, or was comparable to, a listed impairment; (4) [he] could perform past relevant work; and if not, (5) whether [he] could perform any other kind of work."  Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011) (quoting Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010)).  See also Bowen, 482 U.S. at 140-42 (explaining the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).  The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole.  See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is "less

than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## VIII.    Analysis of Issues Presented

In her brief to this Court, Plaintiff first challenges the ALJ's RFC determination, arguing that it is not supported by some medical evidence.  She also challenges the Appeals Council's failure to consider Dr. Berry's Questionnaire.  Second, Plaintiff argues that the hypothetical question to the VE does not capture the concrete consequences of her impairments.  Because this Court finds that this case should be remanded to the ALJ for review of the newly submitted evidence, it does not reach the RFC issue, because this may change on remand.

In the instant case, the ALJ issued his decision on March 20, 2018.  (Tr. 111-20)  Plaintiff requested review from the Appeals Council on April 29, 2018.  (Tr. 137-39)  The new evidence at issue here includes opinion evidence from Dr. Berry, Plaintiff's treating physician and board certified in pain management and anesthesiology.  Dr. Berry completed a Questionnaire dated May 17, 2018, in which he indicates that he started treating Plaintiff in March 2014, and thereafter every two to three months as needed.  (Tr. 30-33)  This Questionnaire was first submitted to the Appeals Council, which acknowledged receipt of the additional evidence but did not consider it because it post-dated the ALJ's decision and thus found that it did not relate to the period at issue.[6]

"Under [20 C.F.R. § 404.970(b)], if a claimant files additional medical evidence with a request for a review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  Whitney v. Astrue, 668

---

[6] To the extent it appears that the Appeals Council refused to consider Dr. Berry's Questionnaire merely because the Questionnaire was done after the date of the ALJ's decision in this case, this is error on the part of the Appeals Council.  See Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990) (finding mere timing of examination does not determine whether evidence is new and material).

F.3d 1004, 1006 (8th Cir. 2012) (emphasis in original). Whether evidence is actually new, material, and related to the adjudicated period is a question of law the court reviews de novo. Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995). The Appeals Council's failure to consider the additional evidence "may be a basis for remand by a reviewing court." Id. "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination." Christofferson v. Berryhill, 2018 WL 1175414, at *4 (D.S.D. Mar. 6, 2018) (quoting Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993)). The "additional evidence must not merely detail after-acquired conditions and post-decision deterioration of a pre-existing condition." Id.

In this case, Defendant does not contend that the evidence is not new or merely cumulative of other evidence considered by the ALJ. Plaintiff correctly asserts that Dr. Berry's Questionnaire pertained to the relevant time period of the ALJ's decision. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("In order to support a remand, new evidence must be relevant, and probative of the claimant's condition for the time period for which benefits were denied.") (internal quotation omitted). The Appeal Council's conclusion that the Questionnaire did not relate to the relevant time period, which is contradicted by an examination of the Questionnaire, demonstrates that the Appeals Council failed to consider the substance of the evidence. See Box, 52 F.3d at 172. The record shows that Dr. Berry started treating Plaintiff in March 2014 and then every two to three months as needed, all within the relevant time period. Perks v. Astrue, 687 F.3d 1086, 1093 (8th Cir. 2012) ("[t]he Appeals Council shall consider additional [new] evidence only where it relates to the period on or before the date of the ALJ hearing decision.").

Defendant appears to assert that Dr. Berry's Questionnaire is not material because, even if considered, the Questionnaire "does not provide a basis for changing the outcome of the ALJ's decision." (ECF No. 23 at 10) Indeed, to be material, there must be a reasonable likelihood that the new evidence would have changed the ALJ's determination. Woolf, 3 F.3d at 1215. Although it is not the Court's duty to reweigh the evidence, the Court must determine whether there is a reasonable likelihood that the ALJ's decision would be different in light of the additional evidence. Id.

Here, Dr. Berry's Questionnaire is not only new but also material. Other than Dr. Berry, no physician who had treated Plaintiff has provided any opinion as to her ability to work.[7] Dr. Berry's Questionnaire provided a longitudinal picture of Plaintiff's functioning. Medical evidence obtained after the ALJ's decision is material if it relates to the plaintiff's condition on or before the date of the ALJ's decision. Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990). The Questionnaire clearly states that it concerns Plaintiff's condition and treatment by Dr. Berry from March 2014, onward. The Questionnaire also satisfies the second materiality prong – there is a reasonable likelihood that, were the ALJ to have considered Dr. Berry's opinions, his decision would be different in light of the additional evidence. "The picture presented to the ALJ is significantly altered by the additional evidence." Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 2000). In this case, there is a reasonable likelihood that the additional evidence would change the ALJ's decision.

It is not the Court's duty to reweigh the evidence. Bates v. Chater, 54 F.3d 529, 531-32 (8th Cir. 1995). The ALJ did not have the opportunity to assess or weigh Dr. Berry's medical source statement as Plaintiff's treating doctor. The opinion of Dr. Berry may be especially

---

[7] The ALJ gave Dr. Krishnamurthi's opinion evidence in his medical interrogatories partial weight because he did not provide a detailed explanation why he found his limitations.

relevant and probative to Plaintiff's ability to work during the relevant time period. "Greater weight is generally given to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist." Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010) (internal quotation omitted). Although Dr. Berry's treatment notes reflect improved pain relief, the notes also indicate continued and increased pain during treatment with activities such as walking, sitting, and standing. A medical source statement that is consistent with treatment notes during the relevant time period may relate back to a plaintiff's disability status on the date last insured. See Tilley v. Astrue, 580 F.3d 675, 680-81 (8th Cir. 2009) (crediting the treating physician's opinion medical source statement where they are consistent with treatment notes from the relevant time).

The undersigned believes that the ALJ should have the opportunity in the first instance to determine whether the opinions of Dr. Berry in the Questionnaire are consistent with his treatment notes and other medical evidence during the relevant time period, and, if not, explain the inconsistencies in the evidence and the amount of weight accorded to Dr. Berry's opinions. See Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007) ("When an ALJ discounts a treating physician's opinion, the Commissioner should give 'good reasons" for doing so."); 20 C.F.R. § 404.1527(c)(2) (Commissioner will always give good reasons for the weight given to your treating source's opinion).

## IX.  Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's

conclusion." Id.

The Court finds that the evidence is new and material so the case should be remanded to the ALJ for review of Dr. Berry's opinions in his Questionnaire to determine their relevance to Plaintiff's claim of disability and to further develop the medical record, if deemed necessary. See Sluka v. Colvin, 2014 WL 4814687, at *14 (E.D.Mo. Sept. 24, 2014) (remanding to the ALJ to consider relevant and new evidence, formulate a new RFC, and further develop the evidence, if necessary, where new opinion evidence provided by a treating physician did not support the ALJ's RFC determination).  Although the ALJ's decision upon remand as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, this determination is one that the Commissioner must make in the first instance. Cohadarevic v. Colvin, 2014 WL 1211507, at *13 (E.D.Mo. Mar. 24, 2014).  For the foregoing reasons, the Court finds that the ALJ's determination is not supported by substantial evidence on the record as a whole.  See Finch, 547 F.3d at 935.  For the reasons set forth above, the Commissioner's decision denying benefits is reversed.  Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

A separate Judgment shall accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of July, 2019.